20-3908, the Ohio Adjunct General's Department, et al. v. American Federation of Government Employees. Oral argument as follows, 15 minutes for the petitioners, 15 minutes to be shared by the interviewer and the respondent. Mr. Hendershot for the petitioners. Good morning. Good morning. Judge Dotson, Judge Cole, Judge Claremont, please the court. Judge Dotson, I think it's the first time I've had the honor to appear before you, so I'm glad we caught each other coming and going. I'd like to reserve three minutes for rebuttal. You may, sir. Your Honor, the question in this case boils down to whether the Ohio National Guard, a state entity, is subject to two distinct command and control structures of the federal government. Not only the purse-string power of the National Guard Bureau, with which we have no quarrel, but also the direct command authority of the Ohio Labor Relations Authority. And as to that authority, we, a state entity, say that the Relations Authority does not have that direct command power over an Ohio entity for three reasons. The first is that the statute that defines the scope of this agency's power reaches only federal entities, not state entities. That's on the employer side of the coin. If you flip the coin over and look at the employee side, this is the second reason. The employees at issue here, these military technicians, are accepted from the statute under the Uniformed Services Exception. And then the third reason is that the Militia Clause of the Constitution reserves to the states powers to govern what's called the militia, now we would call the National Guard. And that, at least as a matter of constitutional avoidance, informs those other two points, those two statutory interpretation points that I started with. I want to unpack each of those a little bit more. So starting first with the definition of agency. So the Federal Labor Relations Authority has the power to issue orders to agencies and labor organizations. We can set that aside here. The definition of agency in the statute reaches only federal executive agencies. It does not extend to the United States Code. I think you can read my friend's briefs a couple of times and still not find the language that they point to in the statute that shows how a state entity, the Ohio National Guard, is covered within the meaning of a federal executive agency. So that means whatever answer you may have as to whether these employees, these military technicians, are within the scope of the act, the agency doesn't have the power to issue a direct order to the State National Guard. Turning to that other question, though, which is an independent reason to vacate the orders here, on the employee side, and this definition also is in the part of Title V that covers this entity, there's an exception to otherwise covered employees for those in the uniformed service. And these military technicians are in the uniformed service because not only do they wear the uniform and the rank while they're performing their jobs, but they're also required to be members of the National Guard to hold these positions. And as members of the National Guard, they're simultaneously members of the National Guard of the United States, and that is a reserve component, at least an inactive reserve component of the Army or the Air Force, respectively. And that makes them part of the Armed Forces within the definition. Let me ask you, Mr. Hendershot, what do we do about the Michigan case? If you can answer that first of all, and then I have another question beyond that. Sure, absolutely. I think I'd make three main points about the Michigan case, the Michigan National Guard case. So it involved a question about, a statement about why these folks, these military technicians, were covered. So it assumed that they were covered under the statute, but it did not examine uniformed services exceptions. So an assumption built into a holding, we would suggest, is not precedent. But beyond that, that's why there are two different, two distinct arguments here, both the employee side, which is the uniformed service exception, but also the employer side. On that question of whether the Michigan National Guard or the Ohio National Guard is a federal executive agency, the opinion doesn't explore that at all, and I believe it wasn't raised. And that's because of the way that case came up. It involved a discipline proceeding against members of the Michigan National Guard, and no one disputes that that is something that's under the power of the Michigan Adjutant General. Well, maybe the other point would be that the Court didn't, made the assumption because every other circuit that has looked at the question you've raised has gone against you on this. And don't we have, I mean, what are all these other states doing? Well, it's a fair point that not only Michigan National Guard, other cases like Lipscomb and the New Jersey National Guard case do view this the same way. They all, we think, have made the same mistake of overlooking both the uniformed service exception and the definition of executive agency. It's sort of a snowball effect from the first assumption made. And so, as another context, sometimes something is hiding in plain sight in a statute. I mean, that happened when the Supreme Court decided the Bostock case just last term. Something that everybody assumed about Title VII for decades turned out to be an incorrect interpretation of a statute. But remember, you're asking us to plow a completely new path here, go down a completely new path that nobody else has been down. Isn't that basically what you're doing? It is a new path, but I'll make two points, I guess. It is a new path, but it's one that has not been blocked off consciously by exploring it and saying the statute does cover, the executive agency does reach state entities, or the uniformed service exception doesn't apply. But remember, too, that the three members of the Federal Labor Relations Authority, two of those members agreed they didn't have the power to do what they did. And the only reason I'm here as a petitioner is that one member dissented, the other member concurred only based on those cases that he thought, as an original matter, reading the statute's language, were not correct. So the authorities' own top members, two of the three of them, think that the order here is something that should be a new path to plow or to walk down. If I could just really follow up on Judge Daughtry's question, I guess I won't go through all of the circuits, but as I look at my notes here, it appears that DC Circuit, 2nd Circuit, 7th, 8th, and 9th, and 3rd Circuits, if I'm right, are on the opposite side of the coin of your argument today. And we're cautioned not to create circuit splits, and I'm wondering if we were to accept your argument, if we're going to be creating a circuit split with us on one side and virtually every other circuit on the other side. I'm not saying we shouldn't do that if your argument carries the day, but I guess I'm just wondering if we're going to create a circuit split, again, with an overwhelming number of courts on one side and us being the lone circuit on the other. No doubt, Judge Colvin, it does create a circuit split, at least in result. I think, like the Michigan National Guard case, many of those others that you mentioned did make an assumption that these are federal civilian employees, therefore anybody that oversees them in capacity is within the reach of the federal labor relations statute. It seems that sort of the key is that you're saying every one of those circuits just made an assumption, but it's somehow not a determination that's key to its analysis or outcome that we're to just treat this as some, I don't know, sort of lightly reached assumption that's occurring at each and every one of these circuit opinions, and for that reason we're not to give it, like, much or any sort of weight. Well, certainly the circuits differ a bit in terms of the depth that they explore these questions. On the uniform service question, I think there is no circuit that I recall that has explored that in depth. On the executive agency, maybe the Fifth Circuit's Lipscomb decision goes into that in a little bit more depth. That, look at it as persuasive, we think not binding, but we do think when you look at the words of the statute, especially on the question of what is a covered agency, there simply is not language anywhere in Title V, and I don't see my friends pointing to something that says this reaches state entities like the Ohio National Guard. And, Counsel, how do we factor into your analysis the authority of the federal government in times of national emergency or other times to federalize the National Guard? Doesn't that suggest that the Guard is subordinate to federal authority? Well, I think that the calling up any of the National Guards into federal service actually supports the point that we're making here, and here is why. The Militia Clause that deals with that question talks about the power of the federal government to govern the state in federal service, and I think the implication there is that the power of governance when they're not in federal service remains with the state officers at the very top, the state governors, and then often the top uniformed officer over the state National Guards, the state adjutant generals. And so we think the Militia Clause certainly points to a serious constitutional question of whether the federal government, outside of its spending clause power, and that's what I mentioned at the very beginning of the National Guard Bureau, we have no quarrel with that When it comes to the direct command authority, we think the Militia Clause certainly shows why there is a division of power, of state federal power, over the governance when, as you pointed out just a minute ago, when those folks are not called into active federal service. Let me ask you about the Federal Labor Relations Authority. Over these years that I've been on the court, you know, you begin to assume that you've seen every statute that there is, that Congress has come up with, but I must say when I saw who the parties were in this case, a big question mark came up. I hadn't seen this before. And so it was interesting to learn about it. But the authority itself has, I gather, three members? Yes, that's my understanding. And I understand that the chairman, Chairman Kiko, is pretty new on the job. What about the other two members? My understanding, I believe the membership today and at the time of this decision is the same. I think the chair has switched. But the dissenting, at the time, Chair Kiko, I believe she was an appointee of the last administration. I think it's also true of the concurring, Abbott, and I believe the now chair, someone who was originally appointed I think by Obama, has now been made the chair by President Biden. If I understand, certainly my friends probably are better equipped to explain that. That is my understanding of how those folks got to those positions. But to underscore that again, two of the three of them, but for these cases that Judge Cole and I were talking about, don't think as an original matter the statute gives them the power to do what they have done here. And so as the time ticks down close to the rebuttal here, I would just close by saying, again, we don't quarrel with the power of the National Guard Bureau to control the money that flows to the Ohio National Guard. And as a state entity, we do not think it is under the direct command authority of the Federal Labor Relations Authority. I will reserve the balance of my time. All right. Thanks, sir. Thank you. We will hear from opposing counsel. Ms. Osborne, are you going first? Yes, ma'am. All right. Good morning, Your Honors. May it please the Court, my name is Rebecca Osborne and together with Noah Peters, I represent the Federal Labor Relations Authority in this matter. All right. The authority's decision, which adopted and incorporated the administrative law judge's decision in this matter, is firmly based on nearly half a century of precedent holding the dual status technicians may engage in collective bargaining. It is also based upon this Court's decision in the Michigan Army National Guard case holding the same thing. And indeed, the collective bargaining relationship between the Ohio National Guard and its employees has existed for close to 50 years. There has been no change in the statute that has prompted these questions from the Ohio National Guard, and there is no reason to overturn the precedent that dual status technicians are covered by the statute. And that is because the language of the statute, the language of the Technicians Act, the legislative history of the statute, and associated statutes all support the conclusion that Congress intended dual status technicians to be covered by the statute. With respect to the arguments that dual status technicians are not covered by the statute, that is actually wrong. This Court and also the Court in Lipscomb have held that dual status technicians are covered by the statute. That is under the Technicians Act 709E. Those technicians are paid for by the, their pay is done by the federal government, and they are supervised by an adjutant general who is acting under a delegation of authority that Congress made from the Department of the Army and the Air Force. That delegation of authority makes the adjutant general a federal actor under the purposes, for the purposes of the statute, and therefore a federal agent. So that when we are talking about this, we're talking about federal employees being supervised by a federal agent. And that is why it fits within the statute. And this was expressed by the authority in this case by the Court in Lipscomb and by all other courts. If you are looking for a more detailed textual analysis, the District Court in Lipscomb had gone through a chain of statutory analysis. It is on pages 616 to 618 and in Note 8. And also the New Jersey National Guard case goes through a list of more trumped-up cases that complicated statutory analysis in footnote 5. But the Court in Lipscomb felt that just doing that statutory analysis was insufficient and that is why it looked at the delegation of authority to the adjutant general and what these employees really are. So there is no question that these employees and the adjutant general are federal employees governed by a federal agency. So can I ask you the same question? If we would accept the Guard's authority here, I'll call them the Guard sort of collectively, would we be creating a circuit split on this issue? Yes, Your Honor, you would. And as I said, every circuit court that has addressed this issue has found that dual status technicians are federal employees and that the adjutant general is a federal actor for the purposes of the statute. And I believe it actually is all of the circuits, one through nine, have all had decisions that address the coverage of the statute to dual status technicians. Did that answer your question? Yes, it did. Thank you. Thank you, Your Honor. With respect to the Uniformed Services exception, first of all, this argument was waived. It was never raised before the authority and Section 7123 of the statute provides that parties need to raise things before the authority in order for them to have jurisdiction before this court. The petitioner concedes that they did not raise this below. The Supreme Court has held this is a jurisdictional bar. But even if the petitioner had not waived this exception, the Uniformed Services exception does not apply to dual status employees. And that is because the authority has continuously held that the Uniformed Services exception applies only to military personnel. So, for example, an employee of the Department of Defense who is a civilian employee will be covered by the statute. In this case, dual status technicians who under the Technicians Act 709E are employees and under 10216 are federal civilian employees. They are acting in their civilian role and therefore they are not acting in a military capacity. And that conclusion actually is bolstered by this Court's decisions both in the Michigan Army National Guard case and in the Babcock decision where the Court explicitly held that the positions held by dual status technicians are not irreducibly military in character. And that is the basis for their exclusion from the Uniformed Services exception because the duties that they are performing as dual status technicians purely in their civil employment is covered by the statute. With respect to the constitutional avoidance and federalism issues that the National Guard raises, both of those are without merit. With respect to this, we are talking about federal employees who are paid by the federal government, who are working on federal property, and who are supervised by an adjutant general who is acting on delegated federal authority. This is entirely a matter of federal employment. So there is no state issue with respect to this. And this actually is something that the court in Lipscomb had taken a look at because the Militia Clause had been raised in that context. And again, it found that since we are talking about their civilian employment, not their military employment, that there is no Militia Clause issues associated with this. And that is because the authority has never attempted to regulate military employment, terms and conditions of military employment, or anything associated with that. It solely is with respect to civilian employment. Finally, although it has not been raised in oral argument, the Ohio National Guard has raised questions about whether or not the remedy that the administrative law judge and the authority has stated as far as the reimbursement of union dues, this is something that the way in which you try to put the parties at status quo ante for the ULP violation occurred and is clearly permissible under the statute. Are there any further questions, Your Honors? No. Thank you, Ms. Humphrey. Thank you, Your Honors. We will hear from, is it Mr. Milledge? Good morning. Good morning, Your Honors. May it please the Court, my name is Matthew Milledge. I am here on behalf of AFGE Local 3970. I would like to start with pointing out that for pretty much as long as dual status technicians have been federal employees, they have had collective bargaining rights. They had collective bargaining rights under the executive order regime that is the CSRA. They continue to have those collective bargaining rights under the CSRA. That is clear from the text, the structure, the purpose, and the legislative history of the CSRA that they continue to have those collective bargaining rights. For example, under 10 U.S.C. 976, Congress has made it illegal for members of the military to be a part of a union, to have collective bargaining rights. When that law was first proposed, it specifically targeted dual status civilian technicians to remove their collective bargaining rights under the executive orders. The House did not agree with that, and in the final law that came to be, civilian technicians continue to have their collective bargaining rights. That statute was at issue in Wichita Air, which the D.C. Circuit addressed and is cited in Intervenor's Brief. In terms of petitioner's argument that... Well, let me ask you this, if I can interrupt you just for a minute. Please, Your Honor. In view of all this apparent precedence and history going back 50 years and all the rest of it, what do you think precipitated this litigation? Anti-union animus. That would be the union's position as to what precipitated this is just... I mean, Ohio deciding they didn't want to have to put up with... With bargaining with a federal union. That is our opinion as to what the basis is, and based on the administrative law judge's decision and his record, there seemed to be a strong evidence of animus there that they didn't want to deal with the union at all, didn't want to have their authority questioned. However, as my colleague pointed out, the adjutant general is acting as an agent with delegated authority from the Secretary of the Army, Secretary of Air Force, as the case may be, and as a federal actor. And in terms of my friend's point that they have no problem with the federal purse strings, that's clearly not true. They want all the benefits of federal support with none of the obligations. And one of the obligations of being an employer of federal civilian employees is that they have collective bargaining rights, and you need to bargain with their exclusive representative. You have an obligation under 5 U.S.C. 7-115 to honor dues assignments, which they did not do here. They canceled the dues assignments. But coming back to my friend's arguments concerning uniformed services, his argument is inconsistent with the text of the statute. The text says uniformed members of the armed forces, and that is a very specific meaning, as was argued in intervener's brief. The armed forces does not include the National Guard or the Reserves, as shown by reference to other statutes which specifically identify the National Guard or the Reserves. More importantly, maybe, is 10 U.S.C. 10-216, which states that for the purposes of that 10 U.S.C. 10-216, you have to be a civilian employee. And so, they cannot be treated as uniformed service members because of that. And I'm going to, unless the court has any other questions, I'm going to. No, I think we've got your argument. Thank you. And Mr. Hendershott, you've got some rebuttal time. Yes, Your Honor, thank you. May it please the Court, I'll make three quick points. Let me start with the point about union animus. I guess I'll make two points about that. Number one, one thing that kicked off the dispute here was, again, I've talked about the purse string power of the National Guard Bureau, and then this different kind of direct command authority of the Federal Labor Relations Authority. Well, one part of that is the federal fiscal officers that oversee the way the National Guard spends money, and one of those folks was telling members of my client that they had to have documentation of these dues. So, sometimes the purse string power and the direct command authority power don't see things in the same way, and that's certainly why, again, to make the second point about this union animus, why two members of the authority itself suggested that it doesn't have this power and why we think it, despite all the circuits that have made assumptions about this, it's an important question to bring before a circuit and to take a fresh look at it. And the second point I'll make is about delegation. You heard the authority suggest, my friend from the authority suggest, that the adjutant general is just exercising delegated authority from the federal government. But the statute does not look at delegation. This is really the statute. If you look at 709, which this is in 32 U.S.C. 709, which my friend points you to repeatedly, it reserves power to the adjutant general to do all kinds of things in terms of disciplining the members of the National Guard. And that, that reservation of authority shows that it is not delegation. Also, if there were, if this were a matter of delegated authority, then the federal government, if it's delegated from, say, the Department of Defense or the secretaries of a particular branch of the military, then they would be able to control the adjutant as to these matters and not have this agency, whose power is limited to issuing orders to federal executive agencies, be issuing that direct command authority. And then finally, the Lipscomb decision, something my friend mentioned I wanted to touch on briefly. If you look at the Fifth Circuit's decision instead of the District Court's decision, it's quite candid, I believe this is at page 618 of the opinion, that you will be unsatisfied if you search the statute to find a way that the statute covers state National Guards. Now, it's true that the Fifth Circuit, based on some of its own precedent in adjacent areas, ultimately concluded that the Federal Labor Relations Authority could do what it was doing to the Mississippi National Guard there. But I think Lipscomb, which is probably the most If you look for the answer in the text, you will be unsatisfied. We would ask you to look afresh at that text. We do not think you are blocked from doing so by Michigan National Guard, which didn't explore this question in any detail. And so, again, I just want to close with emphasizing that the authority, two of its own members, suggest this is something that a court should take a fresh look at. And we encourage you to do that and to say that an Ohio State entity is not subject to the direct command authority of an entity that only can issue orders to federal executive actors. Thank you. All right. Thank you. Thank you to all counsel for their arguments this morning. The case will be submitted and the clerk may